Case 7:24-cv-00355-EKD-CKM    Document 48    Filed 09/29/25    Page 1 of 13
Pageid#: 259

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 29, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL BRIAN FOGEL, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MAJOR T. HALL, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:24-cv-00355<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

**MEMORANDUM OPINION**

*Pro se* plaintiff Daniel Brian Fogel, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against six defendants, all of whom move for summary judgment. (Dkt. No. 17.) Fogel alleges that the defendants failed to protect him from a "hit" that was taken out against him by the "Gangster Disciples" gang at Wallens Ridge State Prison. Fogel has filed a response to the motion for summary judgment. (Dkt. No. 30.) Also before the court is a motion for a preliminary injunction filed by Fogel, requesting a transfer from Wallens Ridge. (Dkt. No. 42.)

For the reasons stated below, defendants' motion for summary judgment will be granted, and plaintiff's motion for a transfer will be denied.

I.  BACKGROUND

**A. Fogel's Complaint**[1]

Fogel states under penalty of perjury that he arrived at Wallens Ridge on November 21, 2023, and notified "Administration" that he wanted to go to "RHU" [Restrictive Housing Unit] to get his "head together" because he feared for his life. (Compl. 2; Dkt. No. 18-1, Fleming Aff. ¶ 4 (explaining that RHU stands for Restrictive Housing Unit).)  He names as defendants Major

---

[1] Plaintiff's complaint is sworn under penalty of perjury. (Dkt. No. 1.)

T. Hall, Warden Jeffrey Artrip, Assistant Warden J.H. Blevins, Counselor P. Adams, Michael Pozeg (Chief of Housing and Programs at Wallens Ridge), and Lt. Fleming (Intelligence Investigator at Wallens Ridge).

At his first "ICA" [Institutional Classification Authority] hearing on November 21 and November 28, 2023, Fogel requested the Star Program [Steps to Achieve Reintegration] to be away from the general population, because the "G.D.'s" have a "hit" on his life. (Compl. 2; Dkt. No. 18-2, Adams Aff. ¶ 7 (explaining that ICA stands for Institutional Classification Authority).) On December 5, the MDT [Multi-Disciplinary Team] team reviewed Fogel for placement in Protective Custody, but it was found to not be appropriate at the time. This decision was approved by Pozeg. (Compl. 3; Adams Aff. ¶ 6 (explaining that MDT stands for Multi-Disciplinary Team).) After a hearing on February 21, 2024, the MDT team placed Fogel back in the general population.

Plaintiff alleges that he has informed "all of the MDT team"—Adams, Hall, and Pozeg—in addition to Artrip, Blevins, and Fleming, that he was a member of the Gangster Disciples and he disassociated himself from the gang. Fogel had been told that the only way he could get his "walking papers" was to stab another individual. Plaintiff refused so a hit was put on his life by this gang throughout the entire Virginia Department of Corrections. (*Id.* at 3.) Fogel was told by all six defendants that if he did not give them names then nothing could be done. Plaintiff responded that he knew their nicknames but not their real names, but still nothing was done. (*Id.* at 3.)

Plaintiff explained the details of the Gangster Disciple's hit to Counselor Adams on January 24, 2024. (*Id.* at 4.) Fogel asked what was going to be done about the situation now that the Star Program is not offered at that prison anymore. Adams told Fogel that his only option

2

was to return to General Population. (*Id.* at 4.) On January 26, Fogel submitted a request to Dr. McDuffie in Mental Health explaining the situation and complaining that it would be unfair for him to "catch charges" with a prison knife to protect himself. Fogel stated that he was overwhelmed by the situation and was placed on medication. (*Id.* at 5.)

On February 12, 2024, at approximately 2:20 to 2:20 p.m., Assistant Warden Blevins was making rounds and Fogel handed him a notarized affidavit explaining the situation with the Gangster Disciples. (*Id.* at 4.) Blevins handed the paper back to Fogel stating that he did not believe Fogel, who had no choice but to return to General Population because "this was not a place to hide out that." Fogel responded that it was "his job to ensure my safety . . . ." (*Id.* at 4.) On February 21, Adams, Pozeg, and another individual, Ms. Church from Classification, conducted plaintiff's ICA hearing at his cell door. Pozeg told Fogel that he was going back into General Population. Fogel protested due to the G.D. hit. (*Id.* at 5.) Warden Artrip responded to Fogel's written complaint on February 26, stating that plaintiff has no keep separates listed on Coris [CORIS is an electronic data base that informs VDOC when an inmate should not be housed with or near another inmate] dating back to 2011, could not find any incidents with fighting, and Fogel was appropriate for the General Population. (*Id.* at 5; Fleming Aff. ¶ 10 (explaining use of CORIS as electronic database).)

On April 11, 2024, at approximately 12:40 to 1:00 p.m., Fogel spoke with Major Hall at his cell door in D-6 pod. (*Id.* at 4.) Fogel asserts that the body camera footage would show that he asked Hall what he was "doing for me concerning my situation." (*Id.* at 4.) Hall stated "I'm finding it hard to believe that G.D.'s have a hit out on you, and I can't get any evidence to support what your telling me, because I'm in pretty good with all of the G.D.'s on the yard here, and when I went and talked to all of them about you, and asked them about you and what the

3

deal was with you, they all pretty much said the same thing, saying they don't know who you are." (*Id.* at 4.) Fogel responded, "do you really expect for another inmate to admit[] that he knows me…?" (*Id.* at 4.)

On December 29, 2024, plaintiff was punished for disobeying an order to return to General Population and was placed in RHU status. Plaintiff claims that he has been in RHU-segregation status since December 29, 2024, where he does not have access to commissary, programs, religious services, reentry services, or the kiosk system. (*Id.* at 3.)

Plaintiff requests $75,000 in compensatory damages, punitive damages from each defendant, and an immediate transfer to an out of state facility for the rest of his prison sentence. (*Id.* at 6.)

## B. Facts in Support of Defendants' Motion for Summary Judgment

In support of their motion for summary judgment, defendants submitted the affidavits of Ms. Adams, Fogel's counselor at Wallens Ridge, Mr. Diggs, a Gang Specialist with the VDOC's Gang Unit, and Lt. Fleming. (Dkt. Nos. 18-1, 18-2, 18-3.)

### 1. Fogel's housing situation

When Fogel arrived at Wallens Ridge in November 2023, he was assigned to Alternative General Population (Alt-GP). Alt-GP is a type of housing in the RHU that is reserved for inmates who refuse assignment to General Population due to an unspecified fear, not a specific fear or threat. (Adams Aff. ¶¶ 4–5.)

The general or default position of the administration at Wallens Ridge is that inmates who can be housed safely in General Population should be housed there, as they are provided the most out of cell recreation time and privileges and the ability to socially interact with other inmates. (Fleming Aff. ¶ 11.) When an inmate refuses to be housed in General Population, he is

4

assigned to Alt-GP status. Alt-GP is essentially a temporary housing assignment which gives an inmate a chance to corroborate his allegations that he cannot be safely housed in General Population. At Wallens Ridge, an inmate is generally given about 30 days to provide specific details to corroborate his allegations. If not, the inmate receives an institutional charge, offense code 201B (Refusing Housing Assignment to General Population), and is moved to RHU status. (Fleming Aff. ¶ 12.)

Records indicate that Fogel was housed in Alt-GP for approximately 84 days before Sgt. Caudill placed a 201B institutional charge. Fogel accepted the penalty offer and was penalized $5. Placing an institutional charge against Fogel was appropriate pursuant to VDOC policy. Fogel was assigned to the RHU at Wallens Ridge until he was transferred to Red Onion on September 17, 2024. (Fleming Aff. ¶ 13; Adams Aff. ¶ 11.)

Counselor Adams saw Fogel in his pod at least once a week. Adams knew that Fogel wanted a transfer to an out of state correctional facility and that he claimed the Gangster Disciples had a "hit" on him. Fogel has refused to provide any specific details or names or any information about the alleged "hit". If Fogel did provide any specific information to Adams, she would have passed that information on to Wallens Ridge's Intelligence Unit for an investigation. (Adams Aff. ¶ 9.) Even so, a member of the MDT spoke to another inmate at Wallens Ridge who was identified by VDOC as a "higher up" in the Gangster Disciples. The MDT[2] member asked this inmate about Fogel's allegations. The inmate told the MDT member that he did not even know who Fogel is. (Adams Aff. ¶ 10.)

---

[2] The MDT is a committee at Wallens Ridge whose members are responsible for reviewing inmates related to RHU statuses and act to make recommendations for an inmate's housing, security level, or transfer. (Adams Aff. ¶ 6.)

5

### 2. Fogel's allegations about threats from gang members

Wallens Ridge has been unable to investigate Fogel's allegations about having a "hit" on him by the Gangster Disciples. Lt. Fleming, the Institutional Investigator, has spoken to Fogel about his safety concerns. Lt. Fleming told Fogel that Wallens Ridge needs specific facts, names, and details for intelligence staff to investigate Fogel's allegations. (Fleming Aff. ¶ 5.) Fogel has not provided any information for the Intelligence Unit to investigation his concerns. (*Id.* ¶ 6.) Fogel has not been involved in any fights or incidents with other inmates at Wallens Ridge. Lt. Fleming has found Fogel to be manipulative, and he has stated that he wants to be transferred to an out of state correctional facility. (*Id.* ¶ 7.) Fogel was told to provide dates, names, or any other details about his allegations, but he has provided no additional information surrounding his claims. Lt. Fleming has advised Fogel on numerous occasions that when he provides more information, an investigation will be conducted. (*Id.* ¶ 8.)

On occasion, some inmates may provide a nickname instead of an inmate's proper name. When this happens, the Intelligence Unit attempts to identify the person by their nickname. They do this by reviewing any Incident Reports related to the inmate who fears for his safety and comparing the Report to VDOC records listing the aliases of any of the other inmates identified or mentioned in those Reports. The Intelligence Unit may also review an inmate's Pre-Sentence Report to determine if there was a co-defendant or other individual involved in the criminal proceeding who has a nickname that may be known or related to the inmate who fears for his safety. Fogel, however, has not provided any nicknames or proper names of any of the Gangster Disciples that he thinks are after him. Lt. Fleming has asked for any name or details on several occasions. Fogel has told Fleming that it is the "whole gang" rather than identify any specific inmate. (Fleming Aff. ¶ 9.)

A "Keep Separate" designation is an alert that VDOC places in an inmate's electronic database, CORIS, that informs VDOC employees that an inmate should not be housed with, or near, another specific inmate. Fogel does not have any "Keep Separate" designations in his CORIS file. (*Id.* ¶ 10.)

### 3. VDOC Gang Unit's attempts to speak with Fogel about his allegations

VDOC's Gang Unit includes employees who investigate allegations of gang activity at VDOC facilities. The Gang Unit investigates allegations that gangs are conducting criminal or improper activities, as well as allegations that a gang member or specific gang is targeting employees or inmates. (Diggs Aff. ¶¶ 1, 4.)

Mr. Diggs has attempted to speak to Fogel about his allegations about a "hit" from the Gangster Disciples. However, Fogel became belligerent during their conversation and told Diggs that he had told the story a million times and was not going to tell it again. Diggs explained to Fogel that he was trying to get specific information so he could investigate the allegations. (Diggs Aff. ¶ 5.) VDOC's goal is to provide security for any inmate who claims he is in danger from a gang, but the Gang Unit needs answers to specific questions, such as "How do you know that the gang has a 'hit' on you?" or "What is the name of the person who told you this?". The Gang Unit encounters inmates all the time who will say anything to get the Gang Unit's attention, and simply mentioning the word "gang" is one way for this to happen. Based on Diggs' encounter with Fogel, he believes that Fogel's claim is not genuine or serious. Fogel made no attempt to talk to Diggs or to provide Diggs with information needed to conduct a formal investigation. (*Id.* ¶¶ 6–7.)

7

### C. Fogel's Response to Motion for Summary Judgment

In his response to the motion for summary judgment, submitted under penalty of perjury, Fogel concedes that he was "kept safe" when incarcerated at Wallens Ridge. (Dkt. No. 30.) He states that this was at his "own expense, by refusing to go back into General Population," which resulted in disciplinary infractions for refusing to obey orders. Also, Fogel contends that "each of the defendants" played a part in deciding to send plaintiff back to General Population. If plaintiff had obeyed those orders, he would have been in imminent danger. To the contrary, the defendants failed to keep him safe from harm and the threat of future assault. (*Id.*)

Fogel also submitted a separate affidavit, along with several exhibits. (Dkt. Nos. 30-1, 30-2.) Fogel avers that Hall shared the "details" of his situation with the gang to a high-ranking gang member, which put Fogel's life in danger. (Fogel Aff. ¶ 4.) Fogel also explains that gang members cannot reach high status by being a snitch or breaking a code of silence. (*Id.*) Finally, and importantly, Fogel admits that he did not assist in any investigation into his allegations for various reasons. Fogel states that it would have been "virtually impossible" to give names of all the gang members who were "actively taking part in the hit that was put on my life." (*Id.* ¶ 7.)

### D. Fogel's Previous and Currently Pending Motions for a Preliminary Injunction

Previously, Fogel filed a motion to transfer "out of the Western Region" to "any correctional facility in the Eastern Region," (Dkt. No. 24), which the court construed as a motion for a preliminary injunction. The court denied this motion because plaintiff did not make any showing that he was likely to succeed on the merits of his claims. Also, Fogel had been transferred to Red Onion, and his claims about retaliation at Red Onion were "not related to his claim that Wallens Ridge officers failed to protect him from an attack at Wallens Ridge." (Dkt. No. 38 at 2.)

8

Pending before the court is another motion for a preliminary injunction by Fogel. (Dkt. No. 42.) He states that he was transferred from Red Onion back to Wallens Ridge on May 4, 2025. Once again, he requests an "immediate transfer from the Wallens Ridge State Prison, to a prison in the Eastern District location, because I fear for my life, safety, and well-being to be housed in the same facility in which I currently have two active civil suit[s] on the employees of, and fear of there being a matter of a conflict of interest in my cases, and of there being dire issues of retaliation against me." (*Id.*)

**E. Body Worn Footage**

Plaintiff filed a motion to issue a subpoena, requesting the production of body camera footage from defendant Hall. (Dkt. No. 29.) Defendants responded, explaining that they would allow Fogel to view the footage. Based on the representation, the court denied Fogel's motion to issue a subpoena as moot. (Dkt. No. 39.) The court also granted defendants' motion to file the video footage under seal. (Dkt. No. 40.)

The video shows defendant Hall making rounds in a housing unit at Wallens Ridge on April 11, 2024, speaking with various inmates at their cells, including plaintiff. The video is just under 52 minutes long and begins at 12:23 p.m. At the thirty-two-minute mark, Hall arrives at Fogel's cell and speaks with him for several minutes. The audio from Hall can be heard, but the audio from Fogel cannot be heard. The conversation recounts much of what Fogel has stated in his allegations: Hall's statements that he cannot endorse a transfer without specific evidence of a threat to Fogel's safety.

II. ANALYSIS

A. **Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Additionally, the court may not "make credibility determinations or weigh the evidence." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). Accordingly, summary judgment is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006).

**B. Eighth Amendment Failure to Protect**

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014). To establish an Eighth Amendment claim premised on failure to protect from harm, plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of harm, and (2) defendants were deliberately indifferent to the risk of harm. *Farmer*, 511 U.S. at 834; *Danser*, 772 F.3d at 346–47. The deliberate indifference prong requires a showing that defendants knew of and disregarded an excessive risk to inmate health or safety. *Danser*, 772 F.3d at 347; *see also Rich v. Bruce*, 129 F.3d 336, 338–40 (4th Cir. 1997).

First, Fogel has not established that he was subjected to a substantial risk of harm. Just as he did not provide sufficient facts to the defendants, he has not provided sufficient facts to the court to create a genuine issue of material fact. His contentions about being at risk from a gang "hit" are complete speculation. When defendants attempted to corroborate his broad contentions, they were unable to do so. Indeed, several defendants recounted in the evidence presented to the court that the Gangster Disciples did not know Fogel and had never heard of him. Fogel's argument that he was a gang member in the first place are unsubstantiated.[3]

Second, defendants did not act with sufficiently culpable intent. Instead, they were regularly in contact with Fogel and attempted to gather information from him and investigate his

---

[3] It appears undisputed that Fogel has not been assaulted or harmed, but this is not necessarily dispositive of his claim. *See, e.g.*, *Douglas v. Annuci*, 14-CV-6018 CJS, 2017 WL 5159194, at *5–6 (W.D.N.Y. Nov. 7, 2017) (canvassing cases and concluding that "an inmate may plead a failure-to-protect claim, even though he [was] not assaulted, if he plausibly alleges that a risk of physical harm actually existed and was imminent"; also, 42 U.S.C. § 1997e(e) "prevents a prisoner-plaintiff from recovering compensatory damages" in the absence of physical injury "but not nominal damages, punitive damages, injunctive relief, or declaratory relief").

allegations. Despite these efforts, defendants were unable to conclude that there was any danger presented to Fogel. Indeed, their efforts to gather information and investigate the matter were thwarted by Fogel. Instead of providing helpful information, Fogel admittedly stonewalled defendants Diggs, Hall, and Fleming, who were merely trying to help Fogel.

Accordingly, defendants are entitled to summary judgment on Fogel's Eighth Amendment claim. *See, e.g.*, *Kelly v. Moyer*, Civil Action No. RDB-16-4143, 2017 WL 35000394, at *4 (D. Md. Aug. 14, 2017) (granting summary judgment on failure-to-protect claim because plaintiff "has presented only conclusory and general claims that his life is at risk because of gang members . . . . Simply put, there is no information showing that Defendants knew of a specific or general threat to Kelly's life and failed to take action to eliminate or reduce the risk").

**C. Injunctive Relief**

Fogel moves for a transfer based on his fear of retaliation for his pending lawsuits. (Dkt. No. 42.) Motions for a transfer by a prisoner are considered motions for injunctive relief. *See, e.g.*, *Campbell v. Smith*, C.A. No. 0:08-3668-PMD-PJG, 2009 WL 3111975, at *1 (D.S.C. Sept. 28, 2009) (explaining that a "request for a transfer to a different penal institution" is "essentially" a request for "preliminary injunctive relief"). A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of the administration of a state prison, injunctive relief should be granted only in compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). The judiciary grants "wide ranging deference" to prison

administrators on matters within their discretion. *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff's motion must be denied because he has not made any showing that he is likely to succeed on the merits of his claims in this action. As the court has now concluded, defendants are entitled to summary judgment on Fogel's Eighth Amendment claim. Moreover, Fogel's claims about fearing retaliation for filing lawsuits are not related to his claim that Wallens Ridge officers failed to protect him from an attack at Wallens Ridge. While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *6 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

### III. CONCLUSION

The court will issue an appropriate order granting defendants' motion for summary judgment and denying plaintiff's motion for a transfer.

Entered: September 29, 2025.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge